IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD JEVAN ERVIN, | § | |
| TDCJ-CID NO. 01494686, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-13-1513 |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Edward Jevan Ervin has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Habeas Petition") (Docket Entry No. 1). Pending before the court is Respondent's Motion for Summary Judgment with Brief in Support (Docket Entry No. 15). For the reasons explained below, the court will grant Respondent's Motion for Summary Judgment and deny Ervin's Habeas Petition.

## I.  Procedural History and Claims

### A.  Procedural History

Ervin was convicted of murder after a jury trial in the 177th District Court of Harris County, Texas.[1]  The jury assessed

---

[1]Reporter's Record (Volume 5), Docket Entry No. 12-21, p. 61. Page citations to state court trial documents, including the record and state court orders, are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.  Page citations to the federal briefs are to the native page numbers at the bottom of the page in the documents.

punishment at forty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.[2]

Texas's First District Court of Appeals affirmed Ervin's conviction.[3] The Texas Court of Criminal Appeals refused Ervin's petition for discretionary review.

Ervin filed an application for a writ of habeas corpus in state court.[4] The state trial court recommended that Ervin's State Habeas Application be denied.[5] The Texas Court of Criminal Appeals denied the application on the basis of the state trial court's findings of fact and conclusions of law.[6]

Ervin filed a petition for a writ of habeas corpus in this court.[7] Respondent filed a motion for summary judgment,[8] to which

───────────────

[2]Reporter's Record (Volume 6), Docket Entry No. 12-22, pp. 45-46.

[3]Ervin v. State, No. 01-08-00207-CR, 2008 WL 5263635 (Tex. App.—Houston [1st Dist.] Dec. 18, 2008, pet. ref'd) (mem. op., not designated for publication), Docket Entry No. 12-5.

[4]Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 ("State Habeas Application"), Docket Entry No. 13-9, pp. 9, 14.

[5]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, pp. 17-22.

[6]Action Taken, Docket Entry No. 13-9, p. 2 (consisting of the following one-sentence order: "DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT AFTER HEARING.").

[7]Habeas Petition, Docket Entry No. 1.

[8]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 15.

Ervin filed Petitioner's Objections To Respondents Motion Motion For Summary Judgment And Request For A De Novo Review Of The Record And Consideration Of Petitioner's Claims On The Merits ("Response").[9]

## B.  **Petitioner's Claims**

Ervin argues that he is entitled to habeas relief because he received ineffective assistance of counsel at trial. Ervin advances nine reasons why his trial counsel was ineffective:

> (1)  Trial counsel's "failure to request a jury instruction on sudden passion";

> (2)  Trial counsel's "failure to request a jury instruction on Reckless Manslaughter";

> (3)  Trial counsel's "failure to request lesser included instruction of Negligent Homicide";

> (4)  Trial counsel's "failure to call known witnesses, who later testified . . . as to the Decease Violent Nature and things of which they themselves told the Petitioner which formed the basis of the Mental State of Petitioner at the time Prior to the shooting";

> (5)  Trial counsel's "failure to call defense witnesses to support petitioner's trial testimony of the shooting of Decease as self defense";

> (6)  Trial counsel's "fail[ure] to so interview known witnesses in order to adequa[tely] prepare for trial and present a viable defense by and through their testimony";

> (7)  Trial counsel's "failure to subpoena or use petitioner cellphone records in his trial";

> (8)  Trial counsel's "failure to subpoena Detective Brown of Houston Police Dep[artment]"; and

---

[9]Response, Docket Entry No. 16.

(9) Trial counsel's "failure to investigate the ballistics of the crime scene evidence involved in the shooting."[10]

Respondent argues that Ervin has failed to exhaust his claims for ineffective assistance of counsel with regard to arguments (3), (6), (7), (8), and (9), and that those claims are now procedurally barred.[11]   Accordingly, Respondent argues that Ervin's entire petition is subject to dismissal as a "mixed" petition.[12] Respondent also argues that he is entitled to summary judgment on all of Ervin's exhausted claims.[13]

Ervin argues that he has exhausted all of his claims in the state courts.[14]   In the alternative, Ervin argues that if any claims have not been exhausted, his failure to exhaust those claims should be excused due to ineffective assistance of habeas counsel.[15]

## II.   <u>Standard of Review</u>

### A.   **Summary Judgment**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

---

[10]Habeas Petition, Docket Entry No. 1, pp. 6-7, 11-13.

[11]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 15, pp. 12-16.

[12]<u>Id.</u> at 13.

[13]<u>Id.</u> at 16-28.

[14]Response, Docket Entry No. 16, pp. 3, 6-12.

[15]<u>Id.</u> at 2-12.

Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id.  If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial.  Id. (citing Celotex, 106 S. Ct. at 2553-54).  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

**B.   Presumptions Applied in Habeas Cases**

"The statutory authority of federal courts to issue habeas corpus relief for persons in State custody is provided by 28 U.S.C.

§ 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 783 (2011). When considering a summary judgment motion the court usually resolves any doubts and draws any inferences in favor of the nonmoving party. <u>Reeves</u>, 120 S. Ct. at 2110. However, the amendments to 28 U.S.C. § 2254 contained in the AEDPA change the way in which courts consider summary judgment in habeas cases.

In a habeas proceeding, 28 U.S.C. § 2254(e)(1) mandates that findings of fact made by a state court are "presumed to be correct." This statute overrides the ordinary summary judgment rule. <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002), <u>overruled in part on other grounds by</u> <u>Tennard v. Dretke</u>, 124 S. Ct. 2562 (2004). Therefore, the court will accept any findings made by the state court as correct unless the habeas petitioner can rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

The provisions of § 2254(d) set forth a "highly deferential standard for evaluating state-court rulings." <u>Lindh v. Murphy</u>, 117 S. Ct. 2059, 2066 n.7 (1997). A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 120 S. Ct. 1495, 1519-20, 1523 (2000). A decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id. at 1523.

In reviewing a state court's determination regarding the merit of a petitioner's habeas claim, a federal court cannot grant relief if "'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 124 S. Ct. 2140, 2143 (2004)).

### III. The Exhaustion Requirement

Respondent argues that Ervin has failed to exhaust his claims for ineffective assistance of counsel with regard to claims (3), (7), (8), and (9) because they were abandoned in the state habeas proceeding.[16] Respondent also argues that Ervin has failed to

---

[16]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 15, p. 14.

exhaust claim (6) "because it was not raised in Ervin's state application for writ of habeas corpus or in his petition for discretionary review."[17]   Ervin argues that the state court had a meaningful opportunity to consider all of his claims because they were presented in both his State Habeas Application and the state habeas court's Order Designating Issues.[18]   Ervin also argues that to the extent any of his claims have been abandoned, the abandonment should be excused due to ineffective assistance of habeas counsel.[19]

## A.  Exhaustion and Procedural Default

The AEDPA requires state prisoners to exhaust state remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b)(1)(A) and (c).  "The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary."  Vasquez v. Hillery, 106 S. Ct. 617, 620 (1986).  A Texas prisoner satisfies the exhaustion requirement when the substance of the federal claims have been fairly presented to the state's highest court by filing either (1) a direct appeal followed, if necessary, by a petition

---

[17]Id. at 13-14.

[18]Response, Docket Entry No. 16, pp. 3, 5-8, 12; see also State Habeas Application, Docket Entry No. 13-9, pp. 9, 14-15; Applicant's Proposed Order Designating Issues ("Order Designating Issues"), Docket Entry No. 13-9, pp. 50-52.

[19]Response, Docket Entry No. 16, pp. 3-4, 8-12.

for discretionary review in the Texas Court of Criminal Appeals; or (2) a state petition for writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure. Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998); Sones v. Hargett, 61 F.3d 410, 414-15 (5th Cir. 1995); Richardson v. Procunier, 762 F.2d 429, 430-32 (5th Cir. 1985). Habeas petitioners are not required to pursue both avenues of relief to meet the exhaustion requirement. Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990). A federal claim satisfies the "fairly presented" require-ment when it is the "substantial equivalent" of the claim presented to the state courts. Whitehead, 157 F.3d at 387. This requirement is not satisfied if the petitioner presents new legal theories as new factual claims in his federal petition. Id.

If a habeas petitioner fails to exhaust his claims in state court, the federal petition for habeas relief must be dismissed. Rose v. Lundy, 102 S. Ct. 1198, 1199, 1205 (1982); Dispensa v. Lynaugh, 847 F.2d 211, 217-18 (5th Cir. 1988). If a petition for habeas relief contains exhausted and unexhausted claims, then it must be dismissed as a "mixed petition" for failure to exhaust. Rose, 102 S. Ct. at 1199, 1205; Murphy v. Johnson, 110 F.3d 10, 11-12 (5th Cir. 1997).

"In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the name of procedural default . . . ." Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006). "A procedural default . . . occurs when a prisoner fails

to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (quoting Coleman v. Thompson, 111 S. Ct. 2546, 2557 n.1 (1991)). Thus, if no state habeas avenue of relief remains open to Ervin, returning to the state courts would be futile and exhaustion is technically satisfied. See Woodford, 126 S. Ct. at 2387. "[B]ut exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." Id.

A Texas court considering Ervin's unexhausted claims in a successive habeas petition would invoke Texas's abuse-of-the-writ doctrine to procedurally bar that action. See Tex. Code Crim. Pro. Ann. art. 11.071, § 4(a). The Fifth Circuit has held that article 11.071 is an adequate state procedural bar because the rule is strictly and regularly enforced. See Ibarra v. Thaler, 691 F.3d 677, 684-85 (5th Cir. 2012), reh'g granted in part sub nom. Ibarra v. Stephens, 723 F.3d 599 (5th Cir. 2013); Aguilar v. Dretke, 428 F.3d 526, 533 (5th Cir. 2005), cert. denied, 126 S. Ct. 2059 (2006); Hughes v. Dretke, 412 F.3d 582, 595 (5th Cir. 2005), cert. denied, 126 S. Ct. 1347 (2006); Barrientes v. Johnson, 221 F.3d

-10-

741, 759 (5th Cir. 2000); Muniz v. Johnson, 132 F.3d 214, 221 (5th
Cir. 1998).

However, a procedural bar is not insurmountable.  A federal
petitioner may overcome the procedural default of his claims after
an adequate showing of cause and prejudice.  The Supreme Court has
held that

> [i]n all cases in which a state prisoner has defaulted
> his federal claims in state court pursuant to an
> independent and adequate state procedural rule, federal
> habeas review of the claims is barred unless the prisoner
> can demonstrate cause for the default and actual
> prejudice as a result of the alleged violation of federal
> law, or demonstrate that failure to consider the claims
> will result in a fundamental miscarriage of justice.

Coleman, 111 S. Ct. at 2565.  In Coleman the Court held that
"[a]ttorney ignorance or inadvertence is not 'cause'" to excuse a
procedural default.  Id. at 2566-67.

In Martinez v. Ryan, 132 S. Ct. 1309 (2012), the Court
recognized a "narrow exception" to the rule "that an attorney's
ignorance or inadvertence in a postconviction proceeding does not
qualify as cause to excuse a procedural default," holding that
"[i]nadequate assistance of counsel at initial-review collateral
proceedings may establish cause for a prisoner's procedural default
of a claim of ineffective assistance at trial."  Id. at 1315.  To
overcome a procedural default on this basis a prisoner must
demonstrate both that his appointed counsel in the state habeas
proceeding "was ineffective under the standards of Strickland v.
Washington," and "that the underlying ineffective-assistance-of-
trial-counsel claim is a substantial one, which is to say that the

-11-

prisoner must demonstrate that the claim has some merit." <u>Id.</u> at
1318 (citing <u>Strickland v. Washington</u>, 104 S. Ct. 2052 (1984)).
The <u>Martinez</u> exception applies to claims for ineffective assistance
of habeas counsel in Texas habeas proceedings. <u>Trevino v. Thaler</u>,
133 S. Ct. at 1921; <u>see also</u> <u>Sells v. Stephens</u>, No. 12-70028, 2013
WL 3784348, at *8 (5th Cir. July 22, 2013) ("[I]t is now undisputed
that deficient counsel in an initial Texas state habeas proceeding
can constitute cause for default.").

Under <u>Strickland</u> a petitioner asserting ineffective assistance
of counsel must demonstrate that (1) counsel's performance was
deficient and (2) counsel's deficient performance prejudiced the
defense. <u>Strickland</u>, 104 S. Ct. at 2064.

"The performance prong of <u>Strickland</u> requires a defendant to
show 'that counsel's representation fell below an objective
standard of reasonableness.'" <u>Lafler v. Cooper</u>, 132 S. Ct. 1376,
1384 (2012) (quoting <u>Hill v. Lockhart</u>, 106 S. Ct. 366, 369 (1985)).
This requires a showing that "counsel made errors so serious that
counsel was not functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment." <u>Strickland</u>, 104 S. Ct. at 2064.
The court's review of counsel's performance is extremely
deferential; the "court must indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable
professional assistance." <u>Id.</u> at 2065.

"To establish <u>Strickland</u> prejudice a defendant must 'show that
there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" <u>Lafler</u>, 132 S. Ct. at 1384 (quoting <u>Strickland</u>, 104 S. Ct. at 2068).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding.   <u>Strickland</u>, 104 S. Ct. at 2068.   "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result."   <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1403 (2011) (quoting <u>Richter</u>, 131 S. Ct. at 792).   When there is overwhelming evidence of guilt the court is not likely to find, absent very compelling evidence, that there is a reasonable probability that but for the attorney's deficient performance the outcome would have been different.   <u>See, e.g.</u>, <u>Sayre v. Anderson</u>, 238 F.3d 631, 635 (5th Cir. 2001); <u>Moawad v. Anderson</u>, 143 F.3d 942, 946 (5th Cir. 1998).   The burden is on the defendant to affirmatively prove prejudice.   <u>Strickland</u>, 104 S. Ct. at 2067.   Even if his attorney made unreasonable errors, the defendant must show that these errors had an actual adverse effect on the defense.   <u>Id.</u>

The petitioner has the burden of proof on an ineffective assistance of counsel claim.   <u>Alexander v. McCotter</u>, 775 F.2d 595, 602 (5th Cir. 1985).   If the petitioner makes an insufficient showing on one prong of the test, the court need not address the other.   <u>Strickland</u>, 104 S. Ct. at 2069.

**B.   Analysis of Ervin's Unexhausted Claims**

To the extent that Ervin abandoned any of his claims in the state habeas proceeding, they have not been exhausted because the

state's highest court has not had a meaningful opportunity to consider the merits of those claims. See Carty v. Thaler, 583 F.3d 244, 254 (5th Cir. 2009); Charles v. Smith, 894 F.2d 718, 722-23 (5th Cir. 1990); Ruth v. Thaler, No. H-13-0277, 2013 WL 4515900, at *5 (S.D. Tex. Aug. 23, 2013) ("The fact that an appeal has 'been through' the state court system is not enough to satisfy the exhaustion requirement; the highest court must have a reasonable opportunity to consider the merits of each of the claims presented in a federal habeas petition." (quoting Picard v. Connor, 92 S. Ct. 509, 512 (1971))). Accordingly, in order to excuse his procedural default Ervin must demonstrate that both his habeas counsel and his trial counsel were ineffective. Martinez, 132 S. Ct. at 1318.

It is arguable that the proper forum to make such a showing is in the state courts. See Edwards v. Carpenter, 120 S. Ct. 1587, 1592 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . . ."); Hatten v. Quarterman, 570 F.3d 595, 605 (5th Cir. 2009) ("[T]he claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures."). But see Murray v. Carrier, 106 S. Ct. 2639, 2646 (1986) ("The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause -- a question of federal law -- without deciding an

independent and unexhausted constitutional claim on the merits.").
Nonetheless, Ervin has failed to demonstrate that his state habeas
counsel was ineffective.

    1.   <u>Claim (3): Trial counsel's "failure to request lesser included instruction of Negligent Homicide"</u>

Ervin argues that his trial counsel was ineffective for
failing "to request [a] lesser included instruction of Negligent
Homicide."[20] The state habeas court found that Ervin had abandoned
this claim.[21] Accordingly, Ervin has failed to exhaust claim (3).
A Texas court considering this unexhausted claim in a successive
habeas petition would invoke Texas's abuse-of-the-writ doctrine to
procedurally bar that action. <u>See</u> Tex. Code Crim. Pro. Ann.
art. 11.071, § 4(a). Ervin argues that this procedural default
should be excused due to ineffective assistance of habeas counsel.[22]

Ervin provides no argument as to why his habeas counsel was
ineffective for abandoning claim (3). At the state habeas hearing,
Ervin's appointed habeas counsel stated that "[t]his clearly
factually was not a criminally negligent homicide case."[23] The
state court specifically asked Ervin's habeas counsel for argument

---

[20]Habeas Petition, Docket Entry No. 1, p. 7.

[21]Findings of Fact, Conclusions of Law, and Order, Docket Entry
No. 13-10, p. 18 ¶ 11; Action Taken, Docket Entry No. 13-9, p. 2.
Claim (3) in Ervin's Habeas Petition corresponds to Ground 1,
subpart 5 in his State Habeas Application.

[22]Response, Docket Entry No. 16, pp. 3-4, 8-12.

[23]Reporter's Record (Volume 1), Docket Entry No. 13-2, p. 10.

on the issue of failure to request a jury instruction on sudden passion, manslaughter, and criminally negligent homicide.[24]   The following colloquy occurred:

> [MR. GRABER (Ervin's state habeas attorney)]: Regarding the questions about reckless homicide and negligent homicide -- manslaughter when I say reckless homicide -- I do not believe that it is a criminally negligent homicide case.  So, therefore, I think the judge would probably be correct in denying that request even if it was made by counsel at trial.
>
> Regarding a request for reckless manslaughter, I think a Defense lawyer could make the argument that the Defendant did not have the desire to intentionally kill the Defendant [sic].  It wasn't his conscious objective or desire to kill the guy.  It was something that happened based upon what was brought to him by the complainant.
>
> And I think a jury could consider that as being a reckless act versus an intentional wanting to -- a conscious objective or desire -- his objective to kill the complainant, wanting him dead.
>
> THE COURT:  Let me stop you there and ask you another question, if I may.
>
> MR. GRABER:  Meaning the Defendant didn't want the complainant dead.  He just wanted to be left alone, wanted to work it out.
>
> THE COURT:  If the defense is self-defense, then by definition there is what amounts to an admission that -- that this was a murder.
>
> MR. GRABER:  I understand.  I understand that.  And the Defendant -- and based upon the testimony of the Defendant -- he testified at trial -- there wasn't any testimony that he committed the act in a reckless way. I will say that to the Court.
>
> So, I would say I agree it's not a criminally negligent homicide case.  No question about that.  The

---

[24]Reporter's Record (Volume 3), Docket Entry No. 13-7, pp. 2-3.

question is could a Defense attorney make an argument.
I think there maybe could be an argument.  The strength
of my argument to the Court now is not really that it's
a reckless homicide kind of case.

THE COURT:  Let me ask --

MR. GRABER:  I can see an argument where that could
be made in a question by the Court and I --

THE COURT:  Just for my --

MR. GRABER:  And I see some courts would give that
to a defendant.

THE COURT:  And am I to understand that your
position is there was a scintilla of evidence that would
have given rise to alternative theories of defense
including  self-defense  and/or  a  lesser  included
manslaughter?

MR.  GRABER:  Just so the record is clear, I'm
thinking.

The Defendant testified and said that the reason he
shot the complainant was because he lifted up his --
aside from knowing everything violent-wise about him or
that "I thought he was going to go through with killing
me," the threats that he had made before and being in
fear of him, that specifically when he shot him, the
Defendant testified that when they were at the apartment
right outside the apartment that the complainant started
to lift up his shirt and the Defendant testified "I
thought he was going for his gun and I had to shoot him."

So I think that gives rise to a self-defense and/or
a sudden passion type lesser punishment argument more
than a reckless homicide argument.  But I think a jury
could take the whole case and look at it that the
Defendant didn't want this guy to die, but he was
probably reckless in his actions of going over there and
he had a gun and he put himself in that situation by even
meeting with the guy instead of -- I don't know what else
he could have done.  You know, fled maybe.  I don't
know.[25]

_____

[25]Id. at 7-10.

-17-

It is clear from this colloquy that Ervin's habeas counsel chose to abandon claim (3) both because of a lack of factual support and to lend credibility to his arguments that trial counsel was ineffective for failing to request a jury instruction on either sudden passion or reckless manslaughter. Ervin advances no argument as to why this was not "within the wide range of reasonable professional assistance." <u>Strickland</u>, 104 S. Ct. at 2065. Instead, Ervin simply alleges that "[a]t no time did habeas counsel consider Petitioner's interest in advanc[ing claim (3)], but insisted that the Judge was not interested in [it]."[26]  These bald allegations are insufficient to demonstrate either that Ervin's state habeas counsel's performance was deficient or that it actually prejudiced his defense. <u>See Ross v. Estelle</u>, 694 F.2d 1008, 1011 (5th Cir. 1983). Accordingly, Ervin has not shown cause to excuse his procedural default with regard to claim (3).

> 2. <u>Claim (6): Trial counsel's failure to "interview known witnesses in order to adequa[tely] prepare for trial and present a viable defense by and through their testimony"</u>

In claim (6) Ervin argues that his trial counsel was ineffective for failing to interview Alvin Ivery, Leonard Ivery, Wilbert Ivery, Henry Fore, and Michael Scott in preparing for trial.[27]  Respondent argues that Ervin has not exhausted claim (6) "because it was not raised in Ervin's state application for writ of

---

[26]Response, Docket Entry No. 16, p. 8.

[27]Habeas Petition, Docket Entry No. 1, p. 11.

habeas corpus or in his petition for discretionary review."[28] However, the issue was raised in Ervin's Factual Supplement to Writ of Habeas Corpus to support his claim that his trial counsel "did not have a firm grasp of the facts of the case and which witnesses the defense would need in trial" because counsel allegedly did not discuss those issues with Ervin.[29] The claim is included in the Order Designating Issues signed by the trial judge.[30] Ervin's attorney was ordered to file an affidavit addressing the issue,[31] and did so.[32] The issue was also discussed extensively at the habeas hearing.[33]

The court is therefore not persuaded by Respondent's assertion that Ervin failed to exhaust claim (6) "because it was not raised in Ervin's state application for writ of habeas corpus or in his petition for discretionary review." However, the state habeas court found that Ervin abandoned this issue.[34] Accordingly, Ervin

---

[28]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 15, pp. 13–14.

[29]Applicant's Factual Supplement to Writ of Habeas Corpus, Docket Entry No. 13-9, pp. 35, 37; State Habeas Application, Docket Entry No. 13-9, pp. 9, 14.

[30]Order Designating Issues, Docket Entry No. 13-9, pp. 50–51.

[31]Applicant's Motion Requesting Order for Filing Affidavit, Docket Entry No. 13-9, pp. 62, 63–64.

[32]Affidavit of Larry B. Douglas, Docket Entry No. 13-9, pp. 70–71.

[33]Reporter's Record (Volume 3), Docket Entry No. 13-6, pp. 21–29.

[34]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, p. 18 ¶ 11; Action Taken, Docket Entry No. 13-9, p. 2; (continued...)

has failed to exhaust claim (6) because it was abandoned in the state habeas proceeding. A Texas court considering this unexhausted claim in a successive habeas petition would invoke Texas's abuse-of-the-writ doctrine to procedurally bar that action. See Tex. Code Crim. Pro. Ann. art. 11.071, § 4(a). Ervin argues that this procedural default should be excused due to ineffective assistance of habeas counsel.[35]

Ervin's habeas counsel explained to the state court that he abandoned claim (6) in light of trial counsel's explanation of his pretrial preparation in the case.[36] At the habeas hearing Ervin's trial counsel testified that he had retained an investigator who talked to Ervin and "follow[ed] up on whatever leads he had."[37] Ervin's trial counsel also stated that he "made several efforts to talk to his witnesses, including [Henry Fore]."[38] Ervin's habeas counsel questioned trial counsel extensively on this issue, as demonstrated by the following colloquy:

> Q. [by Ervin's habeas counsel:]  So my question to you is when you get to the punishment phase of the trial,

---

[34] (...continued)
see also Applicant's Proposed Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, pp. 4, 8-9 ¶¶ 23-24; Reporter's Record (Volume 1), Docket Entry No. 13-2, pp. 7-11. Claim (6) in Ervin's Habeas Petition corresponds to Ground 1, subpart 4 in his State Habeas Application.

[35] Response, Docket Entry No. 16, pp. 3-4, 8-12.

[36] Reporter's Record (Volume 1), Docket Entry No. 13-2, p. 8.

[37] Reporter's Record (Volume 3), Docket Entry No. 13-6, p. 10.

[38] Id.

-20-

did you think that it was beneficial to your client to
call these witnesses, Henry Fore, Alvin Ivery, Leonard
Ivery, Wilbert Ivery and Michael Scott, to testify at the
punishment phase of the trial to try to limit and
mitigate the sentence for your client?  Did you think
about doing that?

A.  [by Ervin's trial counsel:]  Not really because
I hadn't been able to speak to them.  I kept looking for
them, but I could never get them to cooperate with me so
I didn't want to put a witness on that I hadn't really
already talked to.

Q.  Okay.  And I think some of those witnesses,
Henry Fore, Alvin Ivery, and I believe one other --

THE COURT:  Mr. Scott.

Q.  (By [Ervin's habeas counsel]) No, not Mr. Scott.
Henry Fore, Leonard Ivery and Wilbert Ivery, those three
at least in your investigator's voucher, he indicated
that he did interview those three witnesses.

        .  .  .  .

Do you recall that those witnesses supported the
Defendant's story of why he shot the complainant, which
was corroborated by your one other witness that you did
use, Robert Duvall?  Do you recall if they supported
those two people's story as to how this whole thing
happened?

A.  I don't recall what their story would have been
with me because I couldn't get to talk to them.

Q.  Okay.

A.  Robert Duvall was the only one that cooperated
with me.

Q.  And is that why Robert Duvall was the only
witness you used in the trial to support Mr. Ervin's
story of self-defense and how this actually happened
regarding the complainant threatening him first to kill
him if he didn't pay him for the dope that was given to
the Defendant?

A.  Well, Duvall was a witness I could depend on.
Those other guys, I couldn't -- couldn't depend on them.

Q.    Did your investigator write -- to your knowledge, did he write a report, a written report regarding his interviews of Mr. Fore and the two Ivery boys?

A.  I don't know whether he did.  I just don't know.

Q.  And I guess my question is how he -- and if you don't remember, you don't remember.  But how is it that now you remember that these people were not helpful but you didn't interview them and you don't know what his interview indicated.  I guess that's my question.

A.   I don't know what his report would have said, but I talked to Joe [(the investigator)] and -- and in terms of their supporting his story, I don't recall Joe telling me anything about them -- them being helpful witnesses for me.  I would have asked him those kinds of things.

Q. Okay.  And I assume you would have anticipated if they were helpful witnesses that he would have told you that and you would have used them?

A.   I would have certainly tried to use them by talking to them myself.

Q. Okay.

A.   As I -- you know, I did get Duvall into the office and he and I talked and I was able to prepare him as a witness.  I got Fore into the office probably for ten minutes one time and he had to go right away.  The other guys I couldn't track them down.  I couldn't get them to the office.  I couldn't find out where they were. They wouldn't talk to me.[39]

As the foregoing colloquy and investigator's voucher make clear, several of the individuals that Ervin argues should have been interviewed were in fact interviewed by the investigator.[40]  The

---

[39]Id. at 22-25; see also id. at 28-30.

[40]Id.; Voucher, Defendant's Exhibit No. 3, Docket Entry No. 13-8, pp. 12-18.

state habeas court found that the investigator "spoke with witnesses Henry Fore, Robert Duvall, Leonard Ivery, Jr., and Wilbert Ivery."[41]  The state court also found that "[d]espite trial counsel's attempts, the only witnesses who would speak to him in person were Henry Fore and Robert Duvall."[42]  These factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  Ervin has failed to rebut this presumption by clear and convincing evidence.  Id. Furthermore, Ervin has provided no argument as to why, in light of the foregoing, his habeas counsel's decision to abandon claim (6) constituted ineffective assistance of counsel.  Accordingly, Ervin has not shown cause to excuse his procedural default with regard to claim (6).

3.  Claim (7): Trial counsel's "failure to subpoena or use petitioner cellphone records in his trial"

In claim (7) Ervin argues that his trial counsel was ineffective for failing "to subpoena or use [Ervin's] cellphone records in his trial."[43]  The state habeas court found that Ervin had abandoned this claim.[44]  Accordingly, Ervin has failed to

_____

[41]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, p. 19 ¶ 23; Action Taken, Docket Entry No. 13-9, p. 2.

[42]Id. at 20 ¶ 30; see also id. ¶ 24.

[43]Habeas Petition, Docket Entry No. 1, p. 12.

[44]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, p. 18 ¶ 10; Action Taken, Docket Entry No. 13-9, p. 2. Claim (7) in Ervin's Habeas Petition corresponds to Ground 1, subpart 6 in his State Habeas Application.

exhaust claim (7).  A Texas court considering this unexhausted claim in a successive habeas petition would invoke Texas's abuse-of-the-writ doctrine to procedurally bar that action.  See Tex. Code Crim. Pro. Ann. art. 11.071, § 4(a).  Ervin argues that this procedural default should be excused due to ineffective assistance of habeas counsel.[45]

Ervin's habeas counsel explained why he chose to abandon claim (7), stating:

> I've even hired a private investigator myself.  I've personally tried to get [the phone records], and I cannot blame a trial lawyer who couldn't get them then.  We've tried to get them now, been unsuccessful; and the reason we have been unsuccessful now has nothing to do with the passage of time.  It's not like we found out that the records had been destroyed or anything like that.  It's just from the information that we've received, the phone numbers, the cell service providers, it hasn't led to anything.  And so as I told Judge Fine, I don't think it's fair to blame [trial counsel] for that.  But I have been unsuccessful to get [the phone records] even with a private investigator.[46]

Ervin's habeas counsel also stated that he "spent two years trying to get" the phone records[47] and that he and his investigator "tried every way possible to find them, to get them and we can't.  And we've tried a long time."[48]

Ervin does not contest any of his habeas counsel's representations concerning his efforts to obtain the relevant phone

---

[45]Response, Docket Entry No. 16, pp. 3-4, 8-12.

[46]Reporter's Record (Volume 1), Docket Entry No. 13-2, pp. 8-9.

[47]Reporter's Record (Volume 3), Docket Entry No. 13-7, p. 103.

[48]Reporter's Record (Volume 2), Docket Entry No. 13-4, p. 13.

records.   Indeed, Ervin advances no argument to suggest that the
records are actually obtainable.   Accordingly, Ervin has failed to
establish that his habeas counsel's decision to abandon claim (7)
fell below an objective standard of reasonableness.   Accordingly,
Ervin has not shown cause to excuse his procedural default with
regard to claim (7).

    4.   Claim (8):  Trial counsel's "failure to subpoena
        Detective Brown of Houston Police Dep[artment]"

In claim (8) Ervin argues that his trial counsel was
ineffective for failing "to subpoena Detective Brown of Houston
Police Dep[artment]."[49]  The state habeas court found that Ervin had
abandoned this claim.[50]   Accordingly, Ervin has failed to exhaust
claim (8).  A Texas court considering this unexhausted claim in a
successive habeas petition would invoke Texas's abuse-of-the-writ
doctrine to procedurally bar that action.  See Tex. Code Crim. Pro.
Ann. art. 11.071, § 4(a).   Ervin argues that this procedural
default should be excused due to ineffective assistance of habeas
counsel.[51]

At the state habeas proceeding Ervin's habeas counsel
explained that he abandoned claim (8) because "there hasn't been

_____

[49]Habeas Petition, Docket Entry No. 1, p. 12.

[50]Findings of Fact, Conclusions of Law, and Order, Docket Entry
No. 13-10, p. 18 ¶ 11; Action Taken, Docket Entry No. 13-9, p. 2.
Claim (8) in Ervin's Habeas Petition corresponds to Ground 1,
subpart 7 in his State Habeas Application.

[51]Response, Docket Entry No. 16, pp. 3-4, 8-12.

any evidence to support [it]."[52]   The issue of whether Ervin's trial counsel was ineffective for failing to call Detective Brown as a witness was discussed at length in the state habeas proceeding.[53] Ervin's trial counsel testified that he spoke with Detective Brown and concluded that there would be no benefit to calling him as a witness.[54]   Ervin's state habeas counsel determined that based on Ervin's trial counsel's explanations there was no evidence to support Ervin's claim for ineffective assistance of trial counsel on this issue.[55]   Ervin has not explained how either counsel's conclusion was outside of "the wide range of reasonable professional assistance."   Strickland, 104 S. Ct. at 2065.   Instead, Ervin argues that Detective Brown would have testified that he "was investigating the Decease for Murdering Mr. Marcus Johnson two months prior to his being killed by Petitioner" and that such testimony would have bolstered his claim of self-defense.[56] However, the state habeas court concluded that Ervin "fail[ed] to demonstrate there was any available admissible evidence trial counsel could have presented to demonstrate the specific bad act alleged, i.e. that the victim in the instant case murdered Marcus

---

[52]Reporter's Record (Volume 1), Docket Entry No. 13-2, p. 9.

[53]Reporter's Record (Volume 3), Docket Entry No. 13-6, pp. 14-19, 34-63, 73-76, 81-86.

[54]Id.

[55]Reporter's Record (Volume 1), Docket Entry No. 13-2, p. 9.

[56]Habeas Petition, Docket Entry No. 1, p. 12; Response, Docket Entry No. 16-2, pp. 24-26.

Johnson."[57]  This court presumes that the state court's findings of
fact are correct.  28 U.S.C. § 2254(e)(1).  Ervin has failed to
rebut this presumption by clear and convincing evidence.  Id.
Accordingly, Ervin has failed to show cause to excuse his
procedural default with regard to claim (8).

> 5.   Claim (9): Trial counsel's "failure to investigate the
> ballistics of the crime scene evidence involved in the
> shooting"

In claim (9) Ervin argues that trial counsel was ineffective
for failing "to investigate the ballistics of the crime scene
evidence involved in the shooting."[58]  Ervin's state habeas counsel
expressly abandoned this claim at the state habeas proceeding.[59]
The state habeas court found the claim abandoned.[60]  Accordingly,
Ervin has failed to exhaust claim (9).  A Texas court considering
this unexhausted claim in a successive habeas petition would invoke
Texas's abuse-of-the-writ doctrine to procedurally bar that action.
See Tex. Code Crim. Pro. Ann. art. 11.071, § 4(a).  Ervin argues
that this procedural default should be excused due to ineffective
assistance of habeas counsel.[61]

-------------------------------------

[57]Findings of Fact, Conclusions of Law, and Order, Docket Entry
No. 13-10, p. 19 ¶ 21; Action Taken, Docket Entry No. 13-9, p. 2.

[58]Habeas Petition, Docket Entry No. 1, p. 13.

[59]Reporter's Record (Volume 1), Docket Entry No. 13-2,
pp. 9-10.

[60]Findings of Fact, Conclusions of Law, and Order, Docket Entry
No. 13-10, p. 18 ¶ 11; Action Taken, Docket Entry No. 13-9, p. 2.
Claim (9) in Ervin's Habeas Petition corresponds to Ground 1,
subpart 8 in his State Habeas Application.

[61]Response, Docket Entry No. 16, pp. 3-4, 8-12.

Ervin's habeas counsel explained that he abandoned claim (9) because "after investigating that and finding more about the case . . . [t]here's no evidence to support that."[62]   Ervin argues that ballistics testing might indicate that the "decease[d] actually fired a fire arm," which might have supported his defense of self-defense.[63]   However, as the self-defense charge was presented to the jury, evidence that the deceased also fired a weapon is unlikely to have affected the outcome of the case.

The jury charge contained a qualification of the law on self-defense, which stated:

> You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force by a defendant against another is not justified if the defendant sought an explanation from or discussion with the other person concerning the defendant's differences with the other person while the defendant was carrying a weapon in violation of the law.[64]

Texas's First District Court of Appeals affirmed the use of this language in the jury charge, concluding that "there [was] sufficient evidence for a rational trier of fact to find that [Ervin] sought an explanation or discussion with the complainant regarding the marijuana and the money that [Ervin] owed to the complainant."[65]   Ervin testified at trial that he was a convicted

---

[62]Reporter's Record (Volume 1), Docket Entry No. 13-2, pp. 9–10.

[63]Habeas Petition, Docket Entry No. 1, p. 13.

[64]Jury Charge, Docket Entry No. 12-8, p. 13.

[65]Ervin v. State, No. 01-08-00207-CR, 2008 WL 5263635, at *3–*5 (Tex. App.—Houston [1st Dist.] Dec. 18, 2008, pet. ref'd) (mem. op., not designated for publication), Docket Entry No. 12-5.

felon legally prohibited from carrying a gun.[66]  Furthermore, Ervin has provided no argument to overcome the strong presumption that his state habeas counsel acted "within the wide range of reasonable professional assistance" in choosing to abandon claim (9). Strickland, 104 S. Ct. at 2065.  Accordingly, Ervin has failed to show cause to excuse his procedural default with regard to this claim.

## IV.  Ervin's Exhausted Claims

Because Ervin has failed to exhaust several of the claims in his federal habeas petition, his entire petition is subject to dismissal as a "mixed petition."  Rose, 102 S. Ct. at 1199, 1205; Murphy, 110 F.3d at 11-12.  Nevertheless, the court has evaluated the merits of Ervin's exhausted claims and concludes that none of them have any merit.

## A.   Applicable Law:   Ineffective Assistance of Trial Counsel

A federal court reviewing a state court's determination on habeas relief regarding ineffective assistance of trial counsel has a clearly defined and sharply restricted role:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is

---

[66]Reporter's Record (Volume 5), Docket Entry No. 12-21, p. 16.

> a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

<u>Richter</u>, 131 S. Ct. at 785 (citations omitted) (internal quotation marks omitted). The federal court's restricted role prevents the use of an ineffective assistance of counsel claim as a way "to escape rules of waiver and forfeiture and raise issues not presented at trial." <u>Id.</u> at 788.

The Supreme Court has described the nature of the court's inquiry:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court.

<u>Id.</u> at 786. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> If "'fairminded jurists could disagree' on the correctness of the state court's decision," a federal court cannot grant relief. <u>Id.</u> (quoting <u>Yarborough</u>, 124 S. Ct. at 2143).

**B.   Analysis of Ervin's Exhausted Claims**

   1.   <u>Claim (1): Trial counsel's "failure to request a jury instruction on sudden passion"</u>

Ervin's criticism of his trial counsel's failure to seek a jury instruction on "sudden passion" concerns a state law issue

that is not subject to federal habeas review.   See Creel v. Johnson, 162 F.3d 385, 390 (5th Cir. 1998) (citing Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988)); Alexander, 775 F.2d at 601.   Federal courts defer to the state courts on whether such an instruction is warranted.   See, e.g., Valles, 835 F.2d at 126 ("We defer to the state court in its interpretation of its law, and must accept same, for '[i]t is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law,' unless that interpretation violates the Constitution." (citation omitted) (quoting Moreno v. Estelle, 717 F.2d 171, 179 (5th Cir. 1983))).

Ervin raised this issue in his direct appeal.[67]   Applying the Strickland analysis, Texas's First District Court of Appeals noted that Ervin's "trial counsel may have believed that insufficient evidence supported such an instruction or that, if the jury rejected [Ervin]'s claim of self defense, they would also necessarily reject any claim of sudden passion."[68]   The court held that Ervin had "not demonstrated that any acts or omissions of his trial counsel fell below an objective standard of reasonableness" and that Ervin had therefore failed to satisfy Strickland's first prong.[69]   The Texas Court of Criminal Appeals refused Ervin's petition for discretionary review.

---

[67]Ervin v. State, No. 01-08-00207-CR, 2008 WL 5263635, at *6–*8 (Tex. App.—Houston [1st Dist.] Dec. 18, 2008, pet. ref'd) (mem. op., not designated for publication), Docket Entry No. 12-5.

[68]Id. at *7.

[69]Id.

-31-

In addition, the state habeas court made the following findings on the issue of whether Ervin's trial counsel was ineffective for failing to request a jury instruction on sudden passion:

> 35.   According to the credible affidavit of Larry Douglass, counsel did not request an instruction on sudden passion because he did not believe the circumstances under which the offense occurred or the evidence at trial raised an issue of sudden passion.
>
> 36.   On direct appeal, the applicant made the claim of ineffective assistance of counsel for failure to request a sudden passion instruction and the First Court of Appeals noted that the evidence that the applicant argued should have supported a sudden passion instruction, "would not support a sudden passion instruction because it relates only to former provocation," and "it does not relate to the time of the offense." Ervin, No. 01-08-00207, at *7.
>
> 37.   The appellate opinion supports trial counsel's reasonable belief that there was not sufficient evidence to support a sudden passion instruction.
>
> 38.   The applicant fails to demonstrate that counsel's failure to request an instruction on sudden passion fell below an objective standard of reasonableness and that but for the alleged deficiency, a reasonable probability exists that the results of the proceeding would have been different.[70]

The court's own review of the record leads it to conclude that the state habeas court neither applied Strickland unreasonably nor reached a decision based on an unreasonable determination of the facts.   Accordingly, Ervin's claim that his trial counsel was

---

[70]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, p. 21 ¶¶ 35-38; Action Taken, Docket Entry No. 13-9, p. 2.

ineffective for failing to request a jury instruction on sudden passion fails on the merits.

    2.   Claim (2): Trial counsel's "failure to request a jury instruction on Reckless Manslaughter"

Ervin argues that his trial counsel was ineffective for failing to request a jury instruction on reckless manslaughter.[71] Whether a lesser-included offense instruction on reckless manslaughter was appropriate concerns a state law issue that is not subject to federal habeas review. Creel, 162 F.3d at 390; Valles, 835 F.2d at 127; Alexander, 775 F.2d at 601. Furthermore, "'[i]n a non-capital murder case, the failure to give an instruction on a lesser-included offense does not raise a federal constitutional issue.'" Creel, 162 F.3d at 390 (quoting Valles, 835 F.2d at 127).

The state habeas court made the following findings with respect to Ervin's claim that his trial counsel should have requested an instruction on reckless manslaughter:

> 39.    According to the credible affidavit of Larry Douglass, counsel did not believe it was necessary or beneficial to request the jury be charged on lesser-included offenses of manslaughter or criminally negligent homicide because the evidence did not raise either issue.

> 40.    In light of the applicant's testimony that, "I pulled my gun out and squeezed the trigger," (3 R.R. 203), and that he continued shooting at the complainant as he ran away, hitting him in the back six times (4 R.R.39), the applicant fails to demonstrate that the evidence would have supported a charge for either manslaughter or criminally negligent homicide.

---

[71]Habeas Petition, Docket Entry No. 1, p. 6.

> 41.  The applicant fails to demonstrate that counsel's failure to request an instruction on manslaughter or criminally negligent homicide fell below an objective standard of reasonableness and that but for the alleged deficiency, a reasonable probability exists that the result of the proceeding would have been different.[72]

Furthermore, Ervin's habeas counsel specifically stated in the state habeas proceeding that "based upon the testimony of the Defendant -- he testified at trial -- there wasn't any testimony that he committed the act in a reckless way."[73]  Ervin testified at trial that he shot the victim six times in the back while the victim was running away from him.[74]  Cf. Cavazos v. State, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("There was no evidence directly germane to recklessness.  Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene . . . and later telling a friend "I didn't mean to shoot anyone" does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots.").  The court's own review of the record leads it to conclude that the state habeas court did not apply Strickland unreasonably or reach a decision based on an unreasonable determination of the facts.  Accordingly, Ervin's claim that his trial counsel was ineffective for failing to request a jury instruction on reckless manslaughter fails on the merits.

---

[72]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, p. 21 ¶¶ 39-41; Action Taken, Docket Entry No. 13-9, p. 2.

[73]Reporter's Record (Volume 3), Docket Entry No. 13-7, p. 8.

[74]Reporter's Record (Volume 5), Docket Entry No. 12-21, p. 20.

-34-

3.   Claims (4) and (5):  Trial counsel's failure to call certain witnesses

In claim (4) Ervin argues that his trial counsel was ineffective for failing to call certain "known witnesses."[75] Ervin alleges that these witnesses would have testified to the victim's reputation as having murdered another individual and that it was the victim who attempted to fire the first shot.[76] Ervin argues that such testimony would have bolstered his claim that he shot the victim in self-defense.[77]

In claim (5) Ervin argues that his trial counsel was ineffective for failing to call these same witnesses "to support [Ervin]'s trial testimony of the shooting of Decease in self defense."[78] Erwin alleges that the witnesses would have testified that the victim threatened Ervin prior to the shooting.[79] Ervin argues that such testimony would have allowed the jury to infer that the victim intended to kill Ervin and that Ervin reasonably feared for his life, and that such an inference would bolster his claim that he shot the victim in self-defense.[80] Because claims (4) and (5) are closely related, the court will address them together.

---

[75]Habeas Petition, Docket Entry No. 1, p. 7.

[76]Id.; Response, Docket Entry No. 16-1, p. 21, Docket Entry No. 16-2, pp. 22-25.

[77]Habeas Petition, Docket Entry No. 1, p. 7; Response, Docket Entry No. 16-1, p. 21, Docket Entry No. 16-2, pp. 22-25.

[78]Habeas Petition, Docket Entry No. 1, p. 11.

[79]Id.

[80]Id.; Response, Docket Entry No. 16-1, pp. 13-21, Docket Entry No. 16-2, pp. 22-26.

The state habeas court made the following findings relevant to claims (4) and (5):

> 15.    According to the credible testimony of trial counsel, and the knowledge of the parties, prior to the instant murder, a victim named Marcus Johnson was killed in a homicide unrelated to the instant murder. (3 Habeas Record 72-73).

> 16.    According to the credible testimony of trial counsel, and testimony of defense witnesses, counsel had been informed that "word on the street" was that the victim in the instant cause had committed the murder of Marcus Johnson.   (2 Habeas Record 18, 47, 72, 102; 3 Habeas Record 13).

> 17.  The applicant has failed to demonstrate what, if anything[,] the applicant knew regarding the "word on the street" which alleged that the victim in the instant cause had, himself, previously committed a murder.

> .  .  .  .

> 21.  The applicant fails to demonstrate there was any available admissible evidence trial counsel could have presented to demonstrate the specific bad act alleged, i.e. that the victim in the instant case murdered Marcus Johnson.

> 22.  The only evidence the applicant brought forth with regard to the specific bad act alleged was hearsay many times removed from whomever the initial source may have been, exceedingly vague, and wholly unreliable.

> 23.    According to the credible testimony of Larry Douglass and official court records, counsel requested and received funds for an investigator who spoke with witnesses Henry Fore, Robert Duvall, Leonard Ivery, Jr, and Wilbert Ivery. (3 Habeas Record 9, 27-28).

> 24.    According to the credible testimony of Larry Douglass, only witnesses Henry Fore and Robert Duvall would come and speak with him personally. (3 Habeas Record 28).

> 25.  According to the credible affidavit and testimony of Larry Douglass, at pre-trial meetings witness Henry Fore provided no information useful for trial. (3 Habeas Record 28-29).

26.   The testimony of witness Henry Fore given at the
habeas hearing conflicted substantially with testimony
the applicant gave on his own behalf at trial.

27.  According to the credible affidavit and testimony of
Larry Douglass counsel did not attempt to put on evidence
that the complainant had murdered someone prior to the
date on which he was murdered because counsel was never
provided any credible evidence that the prior murder
occurred as described (i.e. that the complainant
committed the murder).   (3 Habeas Record 74-75).

28.   According to the credible testimony of Larry
Douglass, counsel was never able to track down anyone who
had any information better than rumor that the victim in
the instant case had committed a prior murder.  (3 Habeas
Record 74).

29.  The applicant fails to demonstrate that counsel's
failure to attempt to introduce evidence of the alleged
specific bad act of the victim fell below an objective
standard of reasonableness and that but for the alleged
deficiency of counsel, a reasonable probability exists
that the result of the proceeding would have been
different.

30.  Despite trial counsel's attempts, the only witnesses
who would speak to him in person were Henry Fore and
Robert Duvall.  (3 Habeas Record 22-23).

31.   According to the credible testimony of trial
counsel, Henry Fore would not sit with him to talk or
remain in the office for enough time to have a proper
conversation.  (3 Habeas Record 28-29).

32.   Robert Duvall testified that he saw the victim's
body immediately after he was shot, and also saw a friend
of the victim remove a gun from the victim's body.  (4
R.R. 151).

33.   None of the witnesses applicant alleges counsel
should have called to support a self-defense theory would
have provided testimony any more credible or any stronger
than the testimony that was actually given at trial by
the witness Robert Duvall, who counsel did call to
testify.

34.  The applicant fails to demonstrate that counsel's
failure to call additional "self-defense" witnesses fell

> below an objective standard of reasonableness and that
> but for counsel's alleged deficiency, a reasonable
> probability exists that the results of the proceeding
> would have been different.[81]

Ervin argues that "had trial counsel call[ed] the above witnesses

to complainant's aggression, Petitioner's state of mind, and

complainant's prior violent acts, the jury could have reasonably

concluded Petitioner shot complainant in self defense."[82]   The

record shows that the state habeas court considered this argument,

applied the <u>Strickland</u> analysis, and concluded that Ervin had

failed to demonstrate either deficient performance or actual

prejudice as a result of his trial counsel's decision not to call

these witnesses.[83]   In light of the state court's findings that

"[d]espite trial counsel's attempts, the only witnesses who would

speak to him in person were Henry Fore and Robert Duvall," that

only Robert Duvall provided trial counsel with any useful

information, and that "[n]one of the witnesses applicant alleges

counsel should have called to support a self-defense theory would

have provided testimony any more credible or any stronger than the

testimony that was actually given at trial by . . . Robert Duvall,"

the court's own review of the record leads it to conclude that the

---

[81]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, pp. 19–21 ¶¶ 15–34; Action Taken, Docket Entry No. 13-9, p. 2.

[82]Response, Docket Entry No. 16-2, pp. 25–26.

[83]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 13-10, pp. 19–21 ¶¶ 15–34; Action Taken, Docket Entry No. 13-9, p. 2.

state habeas court neither applied <u>Strickland</u> unreasonably nor reached a decision based on an unreasonable determination of the facts.   Accordingly, Ervin's claim that his trial counsel was ineffective for failing to call these witnesses at trial fails on the merits.

## V.   <u>Certificate of Appealability</u>

Although Ervin has not yet requested a Certificate of Appealability ("COA"), the court may deny a COA <u>sua sponte</u>. <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).   To obtain a COA Ervin must make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Tennard</u>, 124 S. Ct. at 2569; <u>Williams v. Puckett</u>, 283 F.3d 272, 277 (5th Cir. 2002).   To make such a showing Ervin must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1073 (5th Cir. 1998); <u>Newby v. Johnson</u>, 81 F.3d 567, 569 (5th Cir. 1996).   For the reasons stated in this Memorandum Opinion and Order, Ervin has not made a substantial showing of a denial of a constitutional right.   The court will therefore deny a Certificate of Appealability in this action.

## VI.   <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that there are no genuine issues of fact regarding any of Ervin's claims

and that Respondent is entitled to judgment as a matter of law. Ervin has failed to show that his failure to exhaust claims (3), (6), (7), (8), and (9) should be excused due to ineffective assistance of habeas counsel. Ervin has also failed to show that the state court proceeding concerning claims (1), (2), (4), and (5) was contrary to, or involved an unreasonable application of, clearly established Federal law. Furthermore, Ervin has failed to show that the state court proceeding resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The court concludes, therefore, that under 28 U.S.C. § 2254(d) habeas relief on Ervin's claims is not warranted. Accordingly, the court **ORDERS** the following:

1. Respondent Stephens' Motion for Summary Judgment with Brief in Support (Docket Entry No. 15) is **GRANTED**.

2. Ervin's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**.

3. A Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this 21st day of November, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-40-